UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-60017-CIV-GOLD/MCALILEY

*In re* TOUSA, Inc., *et al.*,

    Debtors.
_____
3V CAPITAL MASTER FUND LTD., *et. al.*,

    Appellants,

v.

OFFICIAL CREDITORS COMMITTEE OF
UNSECURED CREDITORS OF TOUSA,
INC., *et. al.*,

    Appellees.
_____

<u>ORDER DENYING THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO STAY BRIEFING, OR, IN THE ALTERNATIVE, TO DISMISS **[DE 16]**</u>

THIS CAUSE is before the Court on Appellee the Official Committee of Unsecured Creditors of TOUSA, Inc., *et al.*, ("the Committee") Motion to Stay Briefing, or, in the Alternative, to Dismiss (the "Motion") **[DE 16]**. On February 9, 2010, Appellants 3V Capital Master Fund Ltd., *et al.*, ("The Senior Transeastern Lenders") filed a Response to Appellees' Motion **[DE 20]**, and on February 16, 2010 Appellees filed a Reply **[DE 42]**. Oral argument on the Motion was heard on March 19, 2010. Having considered the parties' arguments, the pleadings and the relevant case law, Appellees' Motion **[DE 16]** is denied.

I.    **Factual Background**

Because I assume the parties' familiarity with the facts, I will only briefly discuss

1

those facts that are pertinent to the issues before me. This matter arises out of the bankruptcy of TOUSA, Inc. ("TOUSA") and a number of its subsidiaries. The Committee brought an adversary proceeding on behalf of certain subsidiaries of TOUSA (the "Conveying Subsidiaries"), alleging that a financial transaction entered into on July 31, 2007 was a fraudulent conveyance.  In that transaction, TOUSA and the Conveying Subsidiaries borrowed $500 million from Citicorp, *et. al.* (the "First Lien Lenders") and Wells Fargo, *et. al.,* (the "Second Lien Lenders"), and secured those obligations with liens on substantially all of the assets of TOUSA and the Conveying Subsidiaries.  Most of the borrowed funds were immediately paid to Defendant-Appellants the "Senior Transeastern Lenders" to settle a law suit against TOUSA.

On October 13, 2009, the bankruptcy court issued a Final Judgment Order and Findings of Fact and Conclusions of Law (collectively the "Final Judgment") [BK DE 658 & 659].[1]   The bankruptcy court held, among other things, that the liens granted and obligations incurred by the Conveying Subsidiaries in connection with the $500 million secured financing facility entered into on July 31, 2007 were fraudulent transfers, and that the value of the transferred property could be recovered from the Senior Transeastern Lenders pursuant to 11 U.S.C. § 550(a)(1).   The bankruptcy court further concluded that TOUSA's payment of approximately $403 million out of $421 million to the Senior Transeastern Lenders in settlement of outstanding debt owed by TOUSA also constituted a fraudulent transfer.  Additionally, the court concluded that the First and Second Lien

---

[1] On October 30, 2009, the bankruptcy court adopted an Amended Final Judgment [BK DE 721] and Amended Findings of Fact and Conclusions of Law [BK DE 722], reflecting minor modifications to the original October 13, 2009 ruling.

Lenders' liens on a tax refund claimed by TOUSA shortly before it went bankrupt was an illegal preference.

To unwind the portion of the transaction involving the Senior Transeastern Lenders, the bankruptcy court reinstated their lawsuit against TOUSA and ordered the Senior Transeastern Lenders to disgorge $403 million (plus 9% prejudgment interest from July 31, 2007 for a total of approximately $483 million) that had previously been paid to them as settlement funds.  The ultimate distribution of those disgorged funds, however, has yet to be determined.[2]  The bankruptcy court also avoided the First and Second Lien Lenders' claims and liens on the Conveying Subsidiaries' property; ordered the First and Second Lien Lenders to repay any principal, interest, or other payments they had received by virtue of those claims and liens; and ordered them to disgorge funds that had been paid to them by the bankrupt estate to reimburse their fees for litigating the adversary proceeding.[3]

On October 20, 2009, the Senior Transeastern Lenders, the First Lien Lenders, and the Second Lien Lenders appealed the bankruptcy court's Final Judgment and contemporaneously moved for a stay pending appeal of their obligation to disgorge into an

---

[2] Specifically, the bankruptcy court has not conducted further proceedings to quantify the following amounts to be satisfied by the Senior Transeastern Lenders' $483 million disgorgement:  1) certain transaction costs incurred in connection with the consummation of the July 31, 2007 transaction; (2) the costs incurred by the Debtors and the Committee in connection with prosecuting this adversary proceeding; and (3) the diminution in value between July 31, 2007 and October 13, 2009 of the Conveying Subsidiaries' assets that were formerly subject to the liens.  Any remaining funds will be distributed to the First and Second Lien Lenders as recovery for the $500 million they provided in loans.

[3] To determine the final measure of these obligations and the specifics surrounding the Senior Transeastern Lender's $483 million disgorgement the bankruptcy court has agreed to a briefing schedule and set oral argument for May 17, 2010.

escrow account. The bankruptcy court granted a stay of certain portions of the bankruptcy court's Final Judgment subject to the posting of nearly $700 million in bonds. [*See* BK DE 723]. Thereafter, on November 9, 2009, the Senior Transeastern Lenders filed an emergency appeal before this Court of the bankruptcy court's bond order, challenging the amount of bonds. The First and Second Lien Lenders filed similar motions, and by order dated November 20, 2009, my colleague Judge Adalberto Jordan affirmed the bankruptcy court's order setting bond amounts and set a new deadline of December 22, 2009 for the posting of cash or bonds to secure a stay pending appeal. (*See* Case No. 09-mc-23428, DE 18).[4] To date, most of the defendants have posted appeal bonds in accordance with the amounts of their required disgorgements.

Currently before me is the Senior Transeastern Lenders' appeal of the bankruptcy court's Final Judgment requiring them to disgorge approximately $483 million. Oral argument regarding the distribution of the $483 million ordered to be disgorged by the Senior Transeastern Lenders is set to be heard by the bankruptcy court on May 17, 2010. Appellants have moved to stay, or, in the alternative, to dismiss this appeal as premature. [*See* DE 16]. For the reasons set forth below, Appellees' Motion is denied.

**II.    Analysis**

"A federal court must always determine whether it has jurisdiction to hear a case."

---

[4] On December 22, 2009, certain of the Senior Transeastern Lenders posted $339,017,287.00 in supersedeas bonds and $37,600,243.39 in cash with the Court, for a total of $476,617,531.00.

*Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 819 (S.D. Fla. 2007) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (U.S.2006); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)("Without jurisdiction the court cannot proceed at all in any cause ... On every writ of error or appeal, the first and fundamental question is that of jurisdiction[.]"). Thus, the essential question at issue is whether the bankruptcy court's Final Judgment is a final order, thereby giving this Court jurisdiction for its review.

In the bankruptcy context, district courts sit as appellate courts and "have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges." *The Charter Co. v. The Prudential Ins. Co. of Am. (In re Charter)*, 778 F.2d 617, 621 ( 11th Cir. 1985) (citing 28 U.S.C.A. § 158(a)). The U.S. Supreme Court has defined a final order or decision as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1943)*; see also In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008); *Jove Eng'g v. IRS*, 92 F.3d 1539, 1547 (11th Cir. 1996). Finality is given a more flexible interpretation in the bankruptcy context, however, because bankruptcy is an aggregation of controversies and suits. *Id.* at 1548. Instead, it is generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation. *Commodore Holdings, Inc. v. Exxon Mobile Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003); *Jove Eng'g*, 92 F.3d at 1547-48 (courts consistently consider finality in a more pragmatic and less technical way in bankruptcy cases than in other situations because a bankruptcy case is simply an aggregation of controversies, many of which would

constitute individual lawsuits had a bankruptcy petition never been filed).  But "increased flexibility" does not render appealable an order which does not finally dispose of a claim or adversary proceeding.  *See Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814 at 821 ("[T]he Eleventh Circuit [has held] that a bankruptcy order that disposes of fewer than all claims or parties in an adversary proceeding is not immediately appealable unless the bankruptcy judge certifies the order for immediate review pursuant to Bankruptcy Rule 7054, which incorporates Fed. R. Civ. P. 54(b).") (internal quotations and citations omitted). To be final, a bankruptcy court order must "completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Donovan*, 532 F.3d at 1136-37 (quoting *In re Atlas*, 210 F.3d 1305, 1308 (11th Cir.2000)).

The Eleventh Circuit, however, has also recognized several exceptions to the final judgment rule, including the doctrine of practical finality.[5]  *Atlantic Federal Sav. & Loan Ass'n of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 376 (11th

---

[5]

The doctrine of practical finality was set forth in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), where the Court held that

> when the [interim] decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court....

47 U.S. (6 How.) at 204. *See also In re Martin Bros. Toolmakers, Inc.,* 796 F.2d 1435, 1437 (11th Cir. 1986) (order directing " 'immediate delivery of physical property and subject[ing] the losing party to irreparable harm' " if review delayed until case concluded warranted review).

6

Cir. 1989). The doctrine of practical finality permits a court to review an order that

> decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution.

*In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 726-27 (11th Cir.1995); *See also In re Donovan*, 532 F.3d 1134, 1137 n. 1 (11th Cir. 2008) (The practical finality doctrine provides "that the finality requirement is met where practical considerations require it."); *See also In re Walker*, 515 F.3d at 1210 (concluding that appellate review of the district court's order was warranted where judicial economy would be "turned on its head" if review was delayed)). Accordingly, notwithstanding the lack of finality of an order, a district court still may review it if the order falls within the practical finality exception to the final judgment rule. While I recognize that absent a Rule 54(b) certification[6] by the bankruptcy court, finality requires the end of the litigation in the adversary proceeding as to all claims and parties, I conclude that practical considerations warrant appellate review of the bankruptcy court's Final Judgment.[7]

Here, the Committee contends that the bankruptcy court's Final Judgment is not

---

[6] Pursuant to Fed. R. Civ. P. 54(b), "[w]hen an action presents more than one claim for relief ... the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed.R.Civ.P. 54(b).

[7] It bears mentioning that I do not reach the issues surrounding the appeals of the First and Second Lien Lenders, whose ultimate liability arguably has not yet been determined. The fact that the bankruptcy court "still has work to do on the remedy as it relates to the First and Second Lien Lenders" is irrelevant for purposes of my current analysis. [*See* DE 16, p. 10].

final because "it resolves questions of liability completely, but it answers only some of the questions about the final remedies." [DE 16, p. 6]. Nevertheless, the Committee concedes that "the Senior Transeastern Lenders' disgorgement is clear[.]" [DE 16, p. 7]. As it pertains to the Senior Traneastern Lenders, the Final Judgment provides, in part, as follows:

> Pursuant to 11 U.S.C. § 550 and under applicable New York and Florida fraudulent transfer law, the Senior Transeastern Lenders shall **DISGORGE** to the Conveying Subsidiaries' estates $403 million in principal amount … plus prejudgment interest, with such amounts to be wired into the disgorgement account on or before **November 9, 2009**. The Senior Transeastern Lenders also shall disgorge prejudgment interest on the [funds] at the rate of the (sic) 9% per year, simple interest, for the period between July 31, 2007 and October 13, 2009.

[DE 20, p. 16] (emphasis in original). The Final Judgment, therefore, clearly directs the Senior Transeastern Lenders to pay nearly $483 million in damages, thereby "decid[ing] the right to the property in contest, and direct[ing] it to be delivered up by the defendant to the complainant … and the complainant is entitled to have such decree carried immediately into execution."[8] *See Forgay v. Conrad*, 47 U.S. at 204; *See also Atlantic Federal Sav. & Loan Ass'n of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 380 (11th Cir. 1989) ("The type of issue triggering review of interim orders under *Forgay* are immediately executable judicial decrees deciding property rights."); *See also Ortho Pharmaceutical Corp. v. Sona Distributors*, 847 F.2d 1512, 1517 (11th Cir. 1988)

---

[8] Because the bankruptcy court regarded the Final Judgment as executable, it granted a stay of the Final Judgment pending appeal, but conditioned the stay on the posting of nearly $700 million in bonds. [*See* DE 20, p. 10]. I further note that the Committee has previously argued, before this Court as well as the bankruptcy court, that the Final Judgment is executable. [*See* DE, p. 6].

("When a decree 'directs [a party] to pay a certain sum of money and the decree can be carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal[.]"). Accordingly, I conclude that the bankruptcy court's Final Judgment is the type of decree the Eleventh Circuit has recognized as reviewable under the practical finality doctrine.

The Eleventh Circuit has also considered irreparable harm as a factor in determining whether the practical finality exception should apply. *See, e.g., In re Regency Woods Apartments, Ltd.*, 686 F.2d 899, 902-03 (11th Cir.1982) (In the bankruptcy context, "[t]he grant of relief from a stay and the requirement of cash payments to provide adequate protection may require the immediate delivery of property, and may subject the losing party to irreparable injury if appellate review is delayed; therefore, the *Forgay-Conrad* rule appears to apply."); *see also In re Martin Bros. Toolmakers, Inc.,* 796 F.2d 1435 at 1437 (noting that the *Forgay-Conrad* rule allows review "whenever an order directs immediate delivery of physical property and subjects the losing party to irreparable harm if appellate review is delayed until conclusion of the case") (internal quotations omitted). In this regard, the Senior Transeastern Lenders correctly note that if the current appeal were dismissed for lack of jurisdiction, "[e]nforcement of the Final Judgment, requiring payment of nearly $483 million to debtors – which money might be considered an asset of the debtors' estates subject to distribution under a future plan or reorganization [] – would clearly cause the Senior Transeastern Lenders irreparable injury." [DE 45, p. 4]. Thus, this Court has jurisdiction under the practical finality rule and the underlying Final Judgment is ripe for

appellate review.[9]  *See In re Regency Woods Apartments, Ltd.*, 686 F.2d at 902 (practical considerations should govern applicability of *Forgay-Conrad* rule, which treats order as final if it directs immediate delivery of property and subjects losing party to irreparable injury if appellate review is postponed).

In its Motion, the Committee alternatively seeks a stay of the Senior Transeastern Lenders' appeal.  The Committee argues that "[a]lthough the prematurity of this appeal would justify outright dismissal, holding the appeal in abeyance until the bankruptcy court proceedings conclude would be more efficient" given the voluminous record materials which have already been sent to this Court.  [*See* DE 24, p. 10].  In response, the Senior Transeastern Lenders argue that "a stay of the appeal would be extraordinarily harmful" for the following reasons: bond premiums are annual costs, meaning that any delay makes it more likely that the Senior Transeastern Lenders would have to pay another annual premium on December 22, 2010, at then-prevailing market rates; the Senior Transeastern Lenders posted hundreds of millions of dollars as collateral to sureties to issue the bonds or in cash posted to the bankruptcy court, and because the Senior Transeastern Lenders do not have access to the pledged collateral to pursue opportunities for so long as the bonds remain outstanding, this results in additional costs to the Senior Transeastern Lenders beyond the bond premium amounts.  Having already concluded that this appeal is ripe for appellate review as it relates to the Senior Transeastern Lenders, I agree that

---

[9] The Committee further argues that this appeal is proper only if this Court grants permission for interlocutory review pursuant to 28 U.S.C. § 158(a)(3), and that appellants cannot meet the required elements necessary to warrant interlocutory appeal.  However, because I conclude that even assuming the bankruptcy court's Final Judgment is not final, the doctrine of practical finality provides a basis for its review, I do not reach this issue.

a stay of the appeal pending any further proceedings in the bankruptcy court is unwarranted in light of the costs associated with any such delay.[10]

**IV. Conclusion**

Because I have determined that the underlying order is reviewable as it pertains to the Senior Transeastern Lenders under the doctrine of practical finality, and further declined to stay this matter pending further proceedings of the bankruptcy court, it is hereby **ORDERED and ADJUDGED**:

1. Appellee's Motion **[DE 16] is DENIED**.

2. Appellants shall serve and file their initial brief on or before **Tuesday, June 1, 2010**, and the Appellees shall serve and file an answer brief on or before **Monday, August 2, 2010**. The Appellants may serve and file a reply brief by **Friday, September 3, 2010.**

3. Oral Argument on the merits of the appeal will be heard on **Friday, October 29, 2010 at 2:00 P.M.**

4. For the reasons set forth of record, I reserve ruling on Appellants' Motion for Consolidation **[DE 33]**.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of March, 2010.

---

[10] Moreover, given that the bankruptcy court intends to resolve any remaining remedies issues in short order, there may be a final and appealable Final Judgment with regard to all parties by the time the merits of the Senior Transeastern Lenders' appeal is ripe for my review – October 29, 2010 – thereby rendering any questions as to jurisdiction of this appeal as moot.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge Chris McAliley
All Counsel of Record